# 25-3318

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

—————————————

**UNITED STATES OF AMERICA,**

**Plaintiff - Appellee,**

**v.**

**JOEY ANTHONY ANDY,**

**Defendant - Appellant.**

—————————————

On Appeal From The United States District Court
For The Eastern District of Washington
District Court No. 1:23-CR-2054-MKD
The Honorable Mary K. Dimke, United States District Judge

—————————————

**DEFENDANT - APPELLANT'S OPENING BRIEF**

—————————————

Craig D. Webster
Federal Defenders of Eastern Washington
& Idaho
306 E. Chestnut Ave.
Yakima, WA 98901
(509) 248-8920
Email: Craig_Webster@fd.org

Attorney for Defendant - Appellant

## Table of Contents

I.    ISSUES PRESENTED.................................................................................. 1

II.   JURISDICTIONAL STATEMENT ........................................................ 2

III.  BAIL STATUS........................................................................................... 2

IV.  STATEMENT REGARDING ORAL ARGUMENT......................................... 2

V.   STATEMENT OF THE CASE AND FACTUAL SUMMARY ....................... 3

VI.  SUMMARY OF ARGUMENT................................................................ 7

VII.  ARGUMENT........................................................................................... 8

    1. The District Court erred by failing to grant the defendant's motion for judgment of acquittal. There was not sufficient evidence to sustain a conviction..................... 8

    2. The trial court abused its discretion in denying Mr. Andy's request for a jury instruction for the lesser included offense of simple assault................................... 17

    3. Whether the district court abused its discretion by overruling defendant's speculation objection and admitting testimony resulting in evidentiary error affecting Mr. Andy's substantial rights. ...................................................................... 25

VIII.  CONCLUSION.................................................................................... 32

## Table of Authorities

**Federal Cases**                                                              **Page(s)**

*Gilbrook v. City of Westminister*, 177 F.3d 839, 858 (9th Cir. 1999) .................................... 26

*Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995) ......................................................... 2, 26

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ............. 1, 8

*United States v. Arnt*, 474 F.3d 1159, 1163, 1164-1165 (9th Cir. 2007) ...... 2, 17, 18, 24, 25

*United States v. Garcia*, 413 F.3d 201, 210-11, 213-14, 217-19 (2nd Cir. 2005) .... 29, 30, 31

*United States v. Jackson*, 697 F.3d 670, 671, 672 (8th Cir. 2012) .................................... 9, 10

*United States v. Jewett*, 438 F.2d 495, 497 (8th Cir. 1971) ....................................................... 9

*United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994), *cert. denied,* 513 U.S. 856, 115 S.Ct. 162, 3 L.Ed.2d 100 (1994) ........................................................................................... 8

*United States v. Morsette*, 622 F.3d 1200, 1201 (9th Cir. 2010) ..................................... 17, 25

*United States v. Pierre*, 254 F.3d 872, 875 (9th Cir. 2001) ................................................... 18

*United States v. Riggins*, 40 F.3d 1055, 1056-1057 (9th Cir. 1994) ............................. 1, 8, 21

*United States v. Rocha*, 598 F.3d 1144 (9th Cir. 2010) ............................................................ 9

*United States v. Sohappy*, 770 F.2d 816, 822-23 (9th Cir. 1985) ............................................ 9

*Village of Freeport v. Barrella*, 814 F.3d 594, 611 (2nd Cir. 2016) ....................................... 29


**Federal Statutes**                                                           **Page(s)**

18 U.S.C. §§ 113(a)(3) ....................................................................................................... 19, 21

18 U.S.C. §§ 113(a)(3), 1153 .......................................................................................... 2, 3, 8

18 U.S.C. § 113(a)(5) ................................................................................................................ 1

28 U.S.C. §§ 1291 and 1294(1) ................................................................................................ 2


**Rules**                                                                      **Page(s)**

Fed. R. Crim. Proc. 29(a),(c) ......................................................................................... 4, 7, 32

Fed. R. of Evidence Rule 602 ................................................................................................. 27

Fed. R. of Evidence Rule 701 .............................................................................. 27, 28, 29, 30, 31

Fed. R. of Evidence Rule 701(b) ........................................................................................... 29

Fed. R. of Evidence Rule 702 ........................................................................................... 29, 31

Fed. R. of Evidence Rule 704 ................................................................................................. 29

**Other**                                                                    **Page(s)**

*4 Weinstein's Federal Evidence § 701.05(2d ed.2004)*.............................................................. 30

Model Crim. Jury Instr. 9th Cir. 8.5 (2025) ......................................................... 9

Model Crim. Jury Instr. 9th Cir. 5.10 (2025) ................................................... 23

iv

## I.     ISSUES PRESENTED

1.  Whether the District Court erred in denying the defendant's motion for judgment of acquittal because there was insufficient evidence to sustain a conviction finding the defendant guilty of Assault with a Dangerous Weapon.  There was not sufficient evidence to support a finding that the assault took place within the boundaries of the Yakama Nation Indian Reservation (Indian Country).  Motion for judgment of acquittal due to insufficient evidence is reviewed *de novo.*[1]  The test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

2.  Whether the District Court erred in failing to give Mr. Andy his requested jury instruction for the lesser-included-offense of simple assault, 18 U.S.C. §113(a)(5).  A defendant is entitled to a jury instruction on a lesser-included offense if the law and evidence satisfy the following two-part test: (1) the elements of the lesser offense (simple assault) are a subset of the elements of the charged offense (assault with a dangerous weapon), and (2) the evidence would permit a jury to rationally find the defendant guilty of the lesser offense and not guilty of the greater offense.[3]  The

---

[1] *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994).

[2] *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994), (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

[3] *United States v. Arnt,* 474 F.3d 1159, 1163 (9th Cir. 2007), (internal citations omitted).

first prong is reviewed *de novo*.[4] The second prong is reviewed for abuse of discretion.[5]

3. Whether the District Court erred in overruling Mr. Andy's speculation objection to Officer Alcazar's testimony regarding whether an area was within the boundaries of Indian Country. Evidentiary rulings are reviewed for abuse of discretion.[6] The Court must find that the error was prejudicial.[7] Reversal of a jury verdict is not warranted unless the evidentiary error affects a party's substantial rights.[8]

## II. JURISDICTIONAL STATEMENT

The trial court had jurisdiction pursuant to 18 U.S.C. §§ 113(a)(3), 1153. Jurisdiction over this appeal is vested in this Court under 28 U.S.C. §§ 1291 and 1294(1).

## III. BAIL STATUS

The trial court sentenced Mr. Andy to 63 months imprisonment as to Count 1, following his trial.[9] Mr. Andy is in the custody of the Attorney General at Seridan FCI, with a current projected release date of March 14, 2028.

## IV. STATEMENT REGARDING ORAL ARGUMENT

---

[4] *United States v. Arnt,* 474 F.3d 1159, 1163 (9th Cir. 2007), (internal citations omitted).
[5] *United States v. Arnt,* 474 F.3d 1159, 1163 (9th Cir. 2007), (internal citations omitted).
[6] *Heyne v. Caruso,* 69 F.3d 1475, 1478 (9th Cir. 1995), (internal citations omitted).
[7] *Id.*
[8] *Id.*
[9] 1 ER 3. "ER" refers to the Excerpts of Record filed with the instant opening brief, which are contained in four total volumes number I through IV.

2

Mr. Andy is prepared to argue this case if the Court finds that oral argument would be helpful in deciding the issues presented.

## V. STATEMENT OF THE CASE AND FACTUAL SUMMARY

The United States obtained an indictment against Mr. Andy on September 12, 2023.[10] Mr. Andy was charged with one count of Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§113(a)(3), 1153.[11] The incident took place on April 4, 2023.[12] The case arose from a physical altercation between Mr. Andy and E.E. Both gentlemen were homeless and were known by the employees of the nearby homeless shelter, Noah's Ark.[13] The physical altercation took place in a nearby alley and sidewalk off Noah's Ark's property.[14]

Prior to trial, Mr. Andy timely filed a Trial Brief and submitted Proposed Final Jury Instructions.[15] In addition to proposed jury instructions relating to Self-Defense, Mr. Andy requested that the Court include a jury instruction for the Lesser Included Offense of Simple Assault.[16]

---

[10] 1 ER 107-108.
[11] 1 ER 107-108.
[12] 1 ER 107-108.
[13] 2 ER 147-152.
[14] 2 ER 161; 4 ER 456, 463.
[15] 1 ER 59-106.
[16] 1 ER 81-88.

Mr. Andy exercised his right to a jury trial, which commenced on May 13, 2024.[17] The jury trial lasted three days, resulting in a guilty verdict.[18] Mr. Andy moved for a Judgment of Acquittal at the close of the government's evidence.[19] The Court orally denied the motion and the case was sent to the jury.[20] Prior to the matter being sent to the jury, Mr. Andy requested that the Court include the proposed jury instruction for the Lesser Included Offense of Simple Assault.[21] The Court denied this request preventing the jury from being properly instructed and prevented Mr. Andy arguing for a conviction on the lesser offense.[22]

Post-conviction, Mr. Andy timely filed a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c).[23] Mr. Andy argued that the evidence at trial was insufficient to establish that the assault was committed within Indian Country. The Court denied the motion.[24] Mr. Andy filed timely objections to the Draft Presentence Investigation Report. The Court adopted the Draft Presentence Investigation Report (as modified in the Addendum) and Mr. Andy was sentenced to 63 months as to Count 1.[25] Mr. Andy filed a timely Notice of Appeal.[26]

---

[17] 2 ER 110.  (Day 2, 5/14/24).
[18] 1 ER 55.
[19] 3 ER 359-370.
[20] 3 ER 369-370.
[21] 3 ER 358-359.
[22] 3 ER 371.
[23] 1 ER 41-53; 26-40.
[24] 1 ER 9-25.
[25] 1 ER 3.
[26] 4 ER 468.

Turning to the factual summary of the evidence presented at trial. Through cross-examination of the government's witnesses and through exhibits, Mr. Andy presented a theory of Self-Defense to the jury. The testimony and exhibits at trial showed a verbal confrontation between two men,[27] Mr. Andy and E.E., followed by a physical altercation that took place in an alley way between two sidewalks.[28] The evidence showed that Mr. Andy pulled out a string or chord with an apparently sharp object attached to it.[29] The evidence showed that after the verbal altercation and brief hand check of some type the two men separated.[30] E.E. backed into an alley, while Mr. Andy remained on the sidewalk.[31] Shortly thereafter, E.E. dropped his bag, preparing to engage in a physical altercation, arming himself with a wooden broom in fighting stance.[32] Mr. Andy then approached E.E., pulled out the object on a chord, and struck E.E. one-time.[33] Mr. Andy then retreats, leaving the scene, while E.E. runs back to the homeless shelter from which he had come (Noah's Ark).[34]

At trial the government called eight witnesses.[35] The government called three employees from Noah's Ark.[36] The government called E.E., the alleged victim of the

---

[27] 2 ER 277-281; 2 ER 167-199; 4 ER 196; 4 ER 448 (7:00 – 10:30); 4 ER 462.
[28] 2 ER 277-281; 2 ER 167-199; 4 ER 196; 4 ER 448 (7:00 – 10:30); 4 ER 462.
[29] 2 ER 277-281; 2 ER 167-199; 4 ER 196; 4 ER 448 (7:00 – 10:30); 4 ER 462.
[30] 2 ER 277-281; 2 ER 167-199; 4 ER 196; 4 ER 448 (7:00 – 10:30); 4 ER 462.
[31] 2 ER 277-281; 2 ER 167-199; 4 ER 196; 4 ER 448 (7:00 – 10:30); 4 ER 462.
[32] 4 ER 448 (8:10-9:00); 2 ER 215-216.
[33] 4 ER 448 (8:10-9:00); 4 ER 456.
[34] 4 ER 448 (8:30-10:30).
[35] 2 ER 111.
[36] 2 ER 132, 200, 261

assault.[37]  The government called Ms. Shuster, the person that was with Mr. Andy at the time of the incident.[38]  The government called Wapato Police Department Officer Alcazar, who responded to the scene of the incident.[39]  The government called an attending nurse, Ms. Pla, through whom E.E.'s medical records were admitted.[40]  Finally, the government called a representative of the Yakama Nation through whom Mr. Andy's enrollment information was admitted.[41]

At trial, the defense admitted 15 exhibits.[42]  The exhibits included an enhanced photo of the two men seconds before the strike in which the chord with an object attached can be seen in Mr. Andy's hand.[43]  The exhibits also included clips from the surveillance video and clips from the officer's axon body camera.[44]  The government admitted 11 exhibits.[45]  These included photos, video clips, E.E.'s medical records, and Mr. Andy's blood certification.

During their jury deliberations, the jury had two questions for the Court.[46]  The defense objected to the Court allowing the jury to have access to equipment to allow

---

[37] 2 ER 167.
[38] 2 ER 267.
[39] 2 ER 282.
[40] 2 ER 317.
[41] 2 ER 329; 4 ER 455.
[42] 2 ER 113; 4 ER 456-467.
[43] 4 ER 456.
[44] 4 ER 457-461.
[45] 2 ER 112.
[46] 1 ER 56, 58.

them to manipulate the evidence by zooming in on certain portions of the video.[47] The Court overruled the objection and provided the jury with their requested access.[48] Additionally, the jury asked a question regarding the elements of self-defense.[49] The jury asked, 'does the government have to prove that the defendant did not act in self defense or should it be presumed?'[50] The Court responded by directing them to go back to the jury instructions.[51]

Ultimately, after several hours of deliberation a guilty verdict was returned by the jury. Mr. Andy presented a self-defense at trial, choosing not to testify. As stated above, Mr. Andy filed a timely appeal.

## VI. SUMMARY OF ARGUMENT

The trial court committed three reversible errors. First, the trial court erred in not granting Mr. Andy's Federal Rules of Criminal Procedure Rule 29(a),(c) motions for a Judgment of Acquittal. There was insufficient evidence to sustain the conviction after viewing the evidence in the light most favorable to the prosecution, as no rational juror could have found the essential elements of the crime, specifically that the assault occurred within Indian Country, beyond a reasonable doubt. Second, the trial court erred in denying the defendant's request for jury instructions allowing the defendant to

---

[47] 3 ER 427-431.
[48] 3 ER 427-431.
[49] 1 ER 56.
[50] 1 ER 56.
[51] 1 ER 57.

argue for conviction on the lesser offense of simple assault. This prevented the jury from having the opportunity to convict Mr. Andy of the lesser offense as opposed to either having to acquit or find him guilty of the more serious offense of assault with a dangerous weapon. Third, the Court overruled a speculation objection leading to prejudicial error. For these reasons, this Court should reverse Mr. Andy's conviction and remand to the trial court for further proceedings, to include a new trial.

## VII. ARGUMENT

**1. The District Court erred by failing to grant the defendant's motion for judgment of acquittal. There was not sufficient evidence to sustain a conviction.**

The Court reviews claims of insufficient evidence *de novo.*[52] The test for sufficiency of the evidence is, whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[53] The elements of the crime are (1) that the defendant assaulted the victim by intentionally striking, wounding, them, or by using a display of force that reasonably caused him/her to fear immediate harm; (2) the defendant acted with the intent to do bodily to the victim; (3) the defendant used a

---

[52] *United States v. Riggins,* 40 F.3d 1055, 1056-57 (9th Cir. 1994).

[53] *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994), (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Lennick,* 18 F.3d 814, 818 (9th Cir. 1994), *cert. denied,* 513 U.S. 856, 115 S.Ct. 162, 3 L.Ed.2d 100 (1994).

dangerous weapon; (4) that assault took place within the boundaries of Indian Country; and (5) the defendant is an Indian.[54] The only element in question for the purpose of this appeal is the fourth element, whether the assault took place within the boundaries of Indian Country.[55] Here the Court correctly instructed the jury that the Yakama Nation Indian Reservation is Indian Country, but that does not relieve the government of their burden of proof in establishing beyond a reasonable doubt that the assault itself took place within the boundaries of Indian Country (*i.e.,* the Yakama Nation Indian Reservation).[56]

In the case at bar, the government failed to provide sufficient evidence to establish that the assault occurred within the boundaries of Indian Country. The testimony and exhibits clearly established that the altercation began on a sidewalk in front of an unidentified building and continued onto an alleyway in between two sidewalks.[57] The testimony and exhibits also clearly established that the altercation did not occur on the property of Noah's Ark Homeless Shelter.[58] While Noah's Ark was a focal point in many ways it had nothing to do with whether or not the site of the assault took place in Indian Country.

---

[54] *See* 18 U.S.C. §§113(a)(3), 1153; Model Crim. Jury Instr. 9th cir. 8.5 (2025); *U.S. v. Sohappy,* 770 F.2d 816 (9th Cir. 1985); *U.S. v. Rocha,* 598 F.3d 1144 (9th Cir. 2010).

[55] *U.S. v. Jackson,* 697 F.3d 670, 671 (8th Cir. 2012), citing *United States v. Jewett,* 438 F.2d 495, 497 (8th Cir.1971).

[56] *U.S. v. Sohappy,* 770 F.2d 816, 822-23 (9th Cir. 1985).

[57] 4 ER 448, 451, 463.

[58] 4 ER 448, 451, 463; 2 ER 160-162.

To answer the question of whether there was sufficient evidence to establish whether the assault took place in Indian Country it is necessary to review the trial record. The government called eight witnesses at trial.[59] Of the eight witnesses only two witnesses are relevant to whether the government's evidence was sufficient to establish whether the assault took place within the boundaries of Indian Country.[60] Of the exhibits entered at trial, only two are relevant for the purposes of the question at bar.[61]

The first witness is Ms. McElroy.[62] Ms. McElroy was the first witness to be called in the government's case-in-chief.[63] The first question the government asked was, "Good morning, Ms. McElroy. Will you tell the jury where you are employed."[64] To which Ms. McElroy responded, "I work at Noah's Ark Homeless Shelter in Wapato, Washington. It is on the Yakama Nation Reservation."[65] Trial testimony and video exhibits established that the assault did not take place on the property of Noah's Ark Homeless Shelter.[66] There is little that can be inferred from this statement in regards to whether the assault took place within the boundaries of Indian Country.

---

[59] 2 ER 111.
[60] 2 ER 132; 283-287.
[61] 4 ER 453-454.
[62] 2 ER 132.
[63] 2 ER 111.
[64] 2 ER 132.
[65] 2 ER 132.
[66] 4 ER 448, 451, 463; 2 ER 160-162.

10

The next witness, sixth in time, was Officer Alcazar of the Wapato Police Department.[67] Officer Alcazar was introduced as a Wapato PD officer.[68] Then the following exchange occurred between counsel, the Court, and the witness,[69]

"Government: Okay. Where is Wapato located?

Officer: Wapato is located on the Yakama Nation Indian Reservation, approximately 20 minutes south of Yakima.

Government: Okay. How long have you been a resident of the valley?

Officer: I've been a resident—so I was born in Sunnyside. And I lived here until approximately 2017, and then I moved to California. I served with the Marine Corps for four years, and then I moved back to the Lower Valley; so…

Government: And with regard to the Yakama Nation Reservation, how is it that you know that Wapato's located within those boundaries?

Defense Counsel: Your Honor, objection. Speculation.

The Court: Overruled. Lay a foundation how he would know that.

Government: Is it important as part of your duties as a police officer to understand your jurisdictional limits?

Officer: Yes.

Government: And do you have training on these limitations, on your jurisdictional limitations?

Officer: Yes, we do. I have a Special Law Enforcement Commission card with the Bureau of Indian Affairs.

Government: And what does that mean?

---

[67] 2 ER 111, 282.
[68] 2 ER 283.
[69] 2 ER 283-285.

11

Officer:  So basically what that is, as an officer who works on any reservation, they are entitled to become Special Law Enforcement Commission, which basically as performing on—as an on-duty uniformed officer when dealing with members who are enrolled into a federally recognized tribe, that for me as—who has no jurisdiction into—as not being tribal police performing the duties, if I encounter someone who is an enrolled member, I can still perform police actions with my Special Law Enforcement Commission Card.

Government:  And you received training in that area?

Officer:  Yes.  It's through the Bureau of Indian Affairs.

Government:  And what are some of the duties and responsibilities as a—and you're a patrol officer; is that correct?

Officer:  Yes, sir.

Government:  So what are some of your duties and responsibilities?

Officer:  My duties are to respond to calls, also engage in public activities, crime prevention.

Government:  And would those, would those include petty crimes, assaults, things of that nature?

Officer:  Yeah.  So depending on the type of call, anywhere from traffic enforcement and going into, you know, burglaries, assaults, domestic violence.  Any type of crime that we have to investigate, we do.  We will investigate those.

Government:  Okay.

The Court:  Mr. Swensen?

Government:  Yes, ma'am.

The Court:  You asked a question to which there was an objection.  I asked you to lay a foundation.  You never went back and asked the question that you laid a foundation for.

12

Government:  Thank you, Your Honor.  I am trying to remember the question that prompted—

The Court:  Whether Wapato is within the boundaries of the Yakama Nation Reservation.

Government:  Yes.

Government:  Are you—Where is the city of Wapato located?

Officer:  City of Wapato's located in Yakima County on the Yakama Nation Reservation.

Government:  Okay.  Thank you.

Government:  Does that suffice, Your Honor?

The Court:  It's your direct examination.

Government:  Thank you, Your Honor."

The above is the only testimony that can potentially be used to establish that the assault took place within the boundaries of Indian Country.  The government then introduced into evidence of a generic map and a google map of a portion of the city of Wapato, Washington.[70]  Neither map identified the boundaries of the Yakama Nation Indian Reservation.[71]  The testimony and exhibits admitted into evidence failed to establish whether the assault took place within the boundaries of Indian Country.

While it is true that the Court is required to look at the evidence in the light most favorable to the prosecution and to treat any credibility issues or inferences in favor of

---

[70] 2 ER 285-287; 4 ER 453-454.

[71] 4 ER 453-454.

13

the jury's decision, there still must be evidence to make inferences from. Here no rational juror could find beyond a reasonable doubt that the assault took place within the boundaries of Indian Country. The reason appears elusive, but it is simple. The jury is the Finder of Fact. That is their role at a jury trial. The Court is the finder of law, and the jury is the finder of fact. Here, the jury was provided with only conclusory statements, absent of fact. There was no fact from which the trier of fact could conclude that the element was established beyond a reasonable doubt.

The two maps add nothing to this determination.[72] That leaves the two statements made by Officer Alcazar.[73] Based on the nature of the statements, it appears that the witness recognized the need to say in some form that the crime took place within the Indian Country. Turning to statement one.[74] Without prompting from the question, the witness goes beyond the government's question and makes a conclusory statement. The government asks, "And where is Wapato located?" To which the officer responds, "Wapato is located on the Yakama Nation Indian Reservation, approximately 20 minutes south of Yakima."[75] This is a conclusory statement. Nothing in that statement provides the jury with information on how they could make a finding. This is an element that they must prove beyond a reasonable doubt. For example, this would be analogous to an officer testifying on the stand that the defendant had

---

[72] 4 ER 453-454.
[73] 2 ER 283-285.
[74] 2 ER 283.
[75] 2 ER 283.

methamphetamine on his person without any evidence for the jury to determine whether in fact the substance was methamphetamine. The jury would need some form of information such as chemical testing of the substance to determine whether in fact the substance is what the officer says it is.

Another example would be if an officer testified that the defendant assaulted the victim. Some form of evidence would need to be provided for the jury to make a factual determination whether that legal conclusion has been established by fact. For example, the officer could testify that he observed the defendant punch the victim with a fist. He could testify that the victim had a bloody nose, etc. These would provide the jury, the finder of fact, to make factual findings as opposed to just adopting a legal conclusion to which the officer testified to.

In the case at bar, that did not occur. The second statement is basically the same as the first.[76] After being prompted by the Court, the government asked, "…where is the city of Wapato located?"[77] To which the officer responded, "City of Wapato's located in Yakima County on the Yakama Nation Reservation."[78] Once again we just have a conclusory statement basically mirroring or parroting the element of the offense. No rational juror could find beyond a reasonable doubt that the assault took place

---

[76] 2 ER 285.
[77] 2 ER 285.
[78] 2 ER 285.

15

within Indian Country based on two conclusory statements mirroring the element without actual facts to make a finding from.

For example, as Indian Country is often checkerboarded, you would anticipate witness testimony and exhibits to establish where the actual boundaries of the Yakama Nation Indian Reservation are located. That never occurred in the case at bar. No witness with personal knowledge of this information ever testified. There was no testimony establishing that the situs of the offense, an alleyway between two sidewalks, was located within the boundaries of the Yakama Nation Indian Reservation. "Indian reservation lands are owned by the United States and held in trust for the benefit of specific tribes or bands."[79] As such, you would anticipate testimony by a witness that had conducted a records check, had historical knowledge, and who had some form of personal knowledge that the specific parcel of land was held in trust, etc. to establish that the specific record indicates that the parcel of land is reservation land (and therefore within the boundaries of the Yakama Nation Indian Reservation). Furthermore, you would anticipate a witness with historical knowledge, knowledge of the land records, and specific knowledge of the boundaries of the Yakama Nation Indian Reservation to provide a record for the jury to make their finding of fact, ultimately determining whether the situs of the offense was within Indian Country. Instead, the government was relieved of their burden of proof to establish through factual evidence that the

---

[79] *U.S. v. Jackson,* 697 F.3d 670, 672 (8th Cir. 2012).

16

assault occurred within Indian Country. The record is absent of factual evidence establishing this element. Therefore, the matter should be vacated and remanded for a new trial.

In sum, the trial court erred in denying Mr. Andy's Rule 29 motion for a judgment of acquittal. There was insufficient evidence to sustain a conviction. After viewing the evidence in the light most favorable to the government, still no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, reversal of Mr. Andy's conviction is the only appropriate remedy.

**2. The trial court abused its discretion in denying Mr. Andy's request for a jury instruction for the lesser included offense of simple assault.**

The District Court erred in denying Mr. Andy his request for a jury instruction on the lesser included offense of simple assault.[80] A defendant is entitled to have the Court instruct a jury on its theory of defense under appropriate circumstances. One of those appropriate circumstances is the request for a jury instruction on a lesser-included offense.[81] The Court has recognized the necessity of giving the jury the option of convicting a defendant on the lesser offense when they may not find acquittal appropriate nor conviction of the more serious offense.[82] Mr. Andy's case presents a situation where the lesser-included offense should have been presented to the jury for consideration.

---

[80] *U.S. v. Morsette,* 622 F.3d 1200, 1201 (9th Cir. 2010).
[81] *U.S. v. Arnt,* 474 F.3d 1159, 1163 (9th Cir. 2007).
[82] *U.S. v. Arnt,* 474 F.3d 1159, 1165 (9th Cir. 2007).

The Ninth Circuit uses a two-prong test. A defendant is entitled to a jury instruction on the lesser-included offense if the law and evidence satisfy the following test: (1) the elements of the lesser included offense are a subset of the elements of the charged offense; and (2) the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater.[83] The Court reviews the first step *de novo;* and the second step for abuse of discretion.[84] If there is some evidence to support the jury instruction then it is within the province of the jury, and the instruction must be given.[85]

The defendant is able to establish the first prong. The law is well established that simple assault is a lesser offense of assault with a dangerous weapon.[86] Therefore, Mr. Andy has established the first prong.

Turning to the second prong, the defendant need only show some evidence to support a jury instruction.[87] Once the defendant is able to establish that some evidence exists to support the jury instruction, then it is clear that the jury instruction is required because it is ultimately in the province of the jury to determine the credibility of conflicting testimony, and make factual findings.[88]

---

[83] *U.S. v. Arnt,* 474 F.3d 1159, 1163 (9th Cir. 2007), (internal quotes and citations omitted).

[84] *U.S. v. Arnt,* 474 F.3d 1159, 1165 (9th Cir. 2007), (internal citations omitted).

[85] *U.S. v. Arnt,* 474 F.3d 1159, 1164-65 (9th Cir. 2007).

[86] *U.S. v. Pierre,* 254 F.3d 872, 875 (9th Cir. 2001).

[87] *U.S. v. Arnt,* 474 F.3d 1159, 1164-65 (9th Cir. 2007).

[88] *Id.*

Turning to the evidence presented at trial, it is apparent that Mr. Andy was entitled to have the jury instructed on the lesser-included offense of simple assault. The second element of assault with a dangerous weapon required the government to prove beyond a reasonable doubt that Mr. Andy acted with intent to do bodily harm.[89] The testimony at trial established that the incident took place near Noah's Ark homeless shelter.[90] The testimony established that Noah's Ark is a low-barrier facility that provides services and residency to those in need no matter what their current circumstances are.[91] Testimony established that this means that many of the people are still in active drug addiction, living on the streets.[92] Testimony and video evidence at trial established that Noah's Ark had over 20 surveillance cameras monitoring the perimeter.[93] Testimony at trial established that the alleyway in question was a location where people often used drugs and alcohol.[94] Testimony at trial established that the police often were called out to incidents at Noah's Ark. Finally, testimony at trial

---

[89] 18 U.S.C. § 113(a)(3).

[90] 2 ER 215-233.

[91] The Noah's Ark director testified that "Because we're low barrier, we do not ban anyone. You can be under the influence of drugs and alcohol. We do have registered sex offenders. A lot of people coming out of jail tend to stay with us. It's very isolated so there's not very many other places for anyone to—we're the only one out there, so pretty much everybody; anybody who needs a place to stay." 2 ER 133.

[92] 2 ER 221-222.

[93] 2 ER 221.

[94] 2 ER 221-222, 230.

19

established that employees monitored the surveillance video when off-site for this very reason.[95]

At trial, Mr. Andy presented a theory of self-defense. The incident took place in an environment where senses were heightened, surrounded by makeshift weapons, active drug and alcohol use. In fact, the video evidence showed that approximately 30 seconds after Mr. Andy struck E.E. with the apparently sharp object a man came out of the alleyway, looked both ways went back into the alleyway and retrieved what appears to be a large club like object (2x4 block of wood), and begins to pursue Mr. Andy with the large object in hand.[96] That was the nature of the circumstances in which Mr. Andy acted with a display of force.

At trial, the testimony and video evidence established that there was an initial verbal altercation between the two men regarding E.E. stealing Mr. Andy's Bluetooth speaker.[97] The two men have a short physical hand checking, and then the altercation momentarily dissipates and the two men part.[98] Mr. Andy walks back on the sidewalk where he initially was and E.E. walks back to the alleyway between the two sidewalks and the two men stare at each other.[99] It is not until E.E. drops his bag and takes a fighting stance with broom in hand that Mr. Andy reengages with E.E.[100] At this stage,

---

[95] 2 ER 147.
[96] 4 ER 448 (8:30-10:45).
[97] 2 ER 191, 277-279.
[98] 4 ER 448 (7:30-8:20).
[99] 4 ER 448 (8:15-8:30).
[100] 4 ER 448 (8:30-8:45).

Mr. Andy takes the object out and makes one single strike, both men then retreat in opposite directions.[101] Mr. Andy retreats from the scene.[102]

There is some evidence to support the theory of defense that Mr. Andy assaulted E.E. but without intent to commit bodily harm. The two men were in a dangerous area (as shown by how quickly another man was able to retrieve a makeshift weapon from the alleyway and pursue Mr. Andy with makeshift weapon in hand),[103] in a high intensity moment, in which Mr. Andy did not continue to assault E.E. after the initial strike. He did not continue to assault E.E. by way of fists, kicks, strikes with the object, etc. Instead, the evidence showed that Mr. Andy made one single strike, neutralizing his opponent, and immediately retreated to safety. This is some evidence that he committed an assault without the intent to commit bodily harm, but instead doing what he believed was necessary in an effort of self-defense. Even if the jury did not accept that to be a reasonable use of force resulting in acquittal by way of self-defense.

The third element of assault with a dangerous weapon required the government to prove beyond a reasonable doubt that Mr. Andy used a dangerous weapon.[104] It was clear from the evidence at trial that Mr. Andy struck E.E. in the head with an object, that apparently was sharp based on the nature of E.E.'s injury. But the evidence did not necessarily show that a knife was used, as Mr. Andy was charged. The defense

---

[101] 4 ER 448 (8:45-9:05).

[102] 4 ER 448 (9:00-10:30).

[103] 4 ER 448 (9:05-10:30); 2 ER 226-229.

[104] 18 U.S.C. § 113(a)(3); *U.S. v. Riggins,* 40 F.3d 1055 (9th cir. 1994).

21

admitted an exhibit at trial that shows an object on a string but the picture does not appear to be that of a knife.[105]  Furthermore, Mr. Andy was arrested and he was searched incident to arrest.[106]  No knife was found on his person.[107]  Furthermore, Ms. Shuster was in possession of his backpack and consented to the search of Mr. Andy's backpack.  No knife was located.[108]  This information was presented to the jury through testimony and video evidence.[109]

There was some evidence to support that Mr. Andy had in fact struck E.E. with an object that caused his wounds but that it was not a knife.  This theory is supported by the evidence.  Mr. Andy could have been guilty of the lesser offense of simple assault but not of assault with a dangerous weapon.  The jury should have been given the option, but were not due to the Court's refusal to appropriately instruct them on the lesser-included offense of simple assault.

Additionally, the set of facts that were presented to the jury through testimony and exhibits fit well within the lens of a simple assault.  As previously argued, this physical altercation did not occur in a vacuum.  This was a physical altercation engaged in on the streets, in dangerous surroundings, among two homeless men, both with makeshift instruments.  The fact that the altercation over the stolen Bluetooth speaker

---

[105] 4 ER 456.

[106] 2 ER 308.

[107] 2 ER 309.

[108] 2 ER 311-313; 4 ER 459, 461.

[109] 2 ER 311-313; 4 ER 459, 461.

initially dissipates but only reignites with the dropping of the backpack by E.E. and the signal to engage in a physical altercation, and the arming himself with a broom. Mr. Andy then making just one single strike and retreating, as opposed to continuing to physically fight with E.E.

The jury was instructed that reasonable force was required to establish self-defense.[110] It is very possible that the jury believed that Mr. Andy was acting in self-defense but that he did not use reasonable force due to the instrument used allegedly being a knife. In the state of Washington, there is no duty to retreat.[111] Mr. Andy was legally free to engage in a physical act of self-defense under the circumstances. But it is possible that the jury did not find that the circumstances justified force necessary to prevent death or great bodily harm.

The jury was clearly struggling with whether Mr. Andy acted in self-defense. In fact they appear to have been struggling with the government's burden of proof related to self-defense.[112] During deliberations the jury asked the Court if they could have access to the video to be able to zoom in.[113] It is reasonably believed that they were hoping to zoom in on different aspects of the altercation. Shortly thereafter, the jury asked another question to the Court regarding the burden of proof of self-defense.[114]

---

[110] *See* Mod. Crim. Jury Instr. 9th Cir. 5.10 (2025) (Self-Defense).
[111] 1 ER 87.
[112] 1 ER 56-58.
[113] 1 ER 58.
[114] 1 ER 56.

The Court was not inclined to point them to a specific instruction and simply answered that they look at the jury instructions.[115] The question the jury had was, "Does the government have to prove that the defendant did not act in self defense or should it be presumed?"[116] Based on this question and the Court's response, it is quite possible that the jury was unable to identify the correct burden of proof and convicted Mr. Andy without the presumption of innocence in relation to self-defense.

Finally, the Court has recognized in the past as identified by caselaw, that the jury may be inclined to convict as opposed to acquit if not given the jury instruction for a lesser-included offense.[117] The jury in the case at bar was very possibly working under those circumstances. Here you had a situation where someone was injured. You had a situation where the jury was clearly engaged in a discussion whether Mr. Andy acted in self-defense, with an uncertainty as to whether they flipped the presumption of innocence to a presumption of guilt in relation to self-defense.[118] Furthermore, you had indication that the jury desired to be able to zoom in on video evidence to assist in their determination.[119] There is a strong possibility that had the jury been given the appropriate jury instructions relating to a lesser-included offense of simple assault then

---

[115] 1 ER 57.

[116] 1 ER 56.

[117] *U.S. v. Arnt,* 474 F.3d 1159, 1165 (9th Cir. 2007).

[118] 1 ER 56-57.

[119] 1 ER 58.

they may have chosen to convict Mr. Andy of simple assault but acquit on assault with a dangerous weapon.

Simple assault is a lesser-included offense of assault with a dangerous weapon.[120] The evidence supports that a rational juror could have determined that Mr. Andy was guilty of simple assault but not of assault with a dangerous weapon. Under the circumstances the Court was required to instruct the jury of the lesser-included offense of simple assault. The failure to do so requires vacation of the conviction and a new trial.[121] Therefore, Mr. Andy respectfully requests that the matter be remanded for a new trial.

**3. Whether the district court abused its discretion by overruling defendant's speculation objection and admitting testimony resulting in evidentiary error affecting Mr. Andy's substantial rights.**

The District Court erred in overruling the defendant's speculation objection to the government's question seeking Officer Alcazar's lay opinion on an element of the offense, which is ultimately the province of the jury.[122] To reverse on the basis of an erroneous evidentiary ruling, the Court must find that the district court abused its

---

[120] *U.S. v. Morsette,* 622 F.3d 1200, 1201 (9th Cir. 2010).
[121] *U.S. v. Arnt,* 474 F.3d 1159, 1165 (9th Cir. 2007).
[122] 2 ER 283-285.

discretion and that the error was prejudicial; furthermore, reversal of a jury verdict is warranted if the evidentiary error affects the defendant's substantial rights.[123]

As previously addressed, the government asked Officer Alcazar: "And with regard to the Yakama Nation Reservation, how is it that you know that Wapato's located within those boundaries?"[124] The defendant objected accordingly, "Your Honor, objection. Speculation."[125] The Court overruled the Defendant's objection.[126] The Court then told the government to lay a foundation.[127] The government began to move on from the line of questioning only to be prompted by the Court to ask the question to which she stated the government just laid the foundation for, namely, "Whether Wapato is within the boundaries of the Yakama Nation Reservation was the question."[128] The government then asked the question, "where is the city of Wapato located?"[129] To which the officer responded, "The city of Wapato is located in Yakima County on the Yakama Nation Reservation."[130]

---

[123] *See Gilbrook v. City of Westminster,* 177 F.3d 839, 858 (9th Cir. 1999) (quoting *Heyne v. Caruso,* 69 F.3d 1475, 1478 (9th Cir. 1995).
[124] 2 ER 283.
[125] 2 ER 283.
[126] 2 ER 283.
[127] 2 ER 283.
[128] 2 ER 285.
[129] 2 ER 285.
[130] 2 ER 285.

The defendant had already objected to this question.[131] The defendant was overruled by the Court.[132] This was the correct objection.[133] The government had not laid a proper foundation, nor could it. Under Federal Rules of Evidence Rule 602 and Rule 701, an objection for 'calls for speculation' is appropriate where the witness needs and/or lacks the personal knowledge to answer the question being asked. Under FRE 602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[134] At the time of the question, there was not a sufficient foundation laid to support a finding that Officer Alcazar had personal knowledge of the boundaries of the Yakama Nation Indian Reservation.

When the Court told the government to lay a foundation for the question already answered to which an objection was made and overruled, the Court subsequently interrupted counsel, told him to ask the question again which the Court indicated he had laid a foundation for.[135] At this stage, there was nothing additional that the defendant could object to. As the Court had overruled the original objection and then stated that the foundation was laid.[136] The defendant had preserved the objection for purposes of appeal. The defendant also was not in a position to further object because

---

[131] 2 ER 283.
[132] 2 ER 283.
[133] FRE 602, 701.
[134] Federal Rules of Evidence Rule 602. Need for Personal Knowledge.
[135] 2 ER 283-285.
[136] 2 ER 283-285.

the Court was prompting the government what questions to ask.[137] Questions relating directly to an element.[138] One that was seeking the opinion of a lay witness as to an element of the offense.[139]

That being said, the government's foundation still did not overcome the original speculation objection. The boundaries of the Yakama Nation Indian Reservation are a complex matter. One that requires personal knowledge of land ownership, title, and familiarity with the mapping of the area. A witness would need to have personal knowledge of the documented record. The officer's testimony did not overcome the objection.

The foundation initially laid was that Mr. Alcazar was an officer with Wapato PD for approximately two and-a-half years.[140] He then testified that he was born in a nearby city, Sunnyside, and after working as a Marine he moved back to the general area (Lower Valley).[141] After the overruling of the objection, he testified that as part of his duties as a police officer he had to know his jurisdictional limits.[142] He testified that he had a Special Law Enforcement Commission card with the Bureau of Indian Affairs.[143] This card allowed him to perform police actions when dealing with tribal members as he was

---

[137] 2 ER 285.
[138] 2 ER 285.
[139] 2 ER 285.
[140] 2 ER 283.
[141] 2 ER 283.
[142] 2 ER 283-284.
[143] 2 ER 284.

not tribal police.[144]  As part of his training he was allowed to engage in patrol, crime prevention, and investigation of certain crimes.[145]  At this point, the government was prompted by the Court.[146]  That is the entirety of the foundation.

Furthermore, the question sought opinion testimony by a lay witness.  Under FRE 701, an opinion that is stated in conclusory terms that does little more than parrot or mirror an element is not helpful to the jury, nor does it inform or assist the jury in determining a fact in issue.[147]  It is merely telling the jury what result to reach.[148]  Therefore, it is not admissible under FRE 701 (b).

The current case is similar to *United States v. Garcia*.[149]  In *Garcia,* the government sought to admit FRE 701 evidence to which the defendant objected.[150]  In this drug trafficking conspiracy case, the Agent testified offering his lay opinion that the defendant was a partner with a co-defendant in receiving cocaine from another co-defendant.  The Court stated that the Agent "was essentially telling the jury that he had concluded that [defendant] was guilty of the crimes charged."  The Court further stated,

> "Although opinion testimony, whether offered by a lay witness pursuant to Fed.R.Evid. 701, or by an expert pursuant to Fed.R.Evid. 702, is not inadmissible simply "because it embraces an ultimate issue to be decided by the trier of fact,´Fed.R.Evid. 704, it is not properly received "merely [to] tell the jury what results to reach," *id.,* Advisory Committee Notes on 1972

---

[144] 2 ER 284.

[145] 2 ER 284-285.

[146] 2 ER 285.

[147] *See Village of Freeport v. Barrella,* 814 F.3d 594, 611 (2d Cir. 2016).

[148] *See United States v. Garcia,* 413 F.3d 201, 214 (2d Cir. 2005).

[149] *United States v. Garcia,* 413 F.3d 201 (2d Cir. 2005).

[150] *United States v. Garcia,* 413 F.3d 201, 210 (2d Cir. 2005).

29

Proposed Rules; *see 4 Weinstein's Federal Evidence § 701.05 (2d ed.2004)* (noting that courts should be wary of opinion testimony whose "sole function is to answer the same question that the trier of fact is to consider in its deliberations"). Indeed, the purpose of the foundation requirements of the federal rules governing opinion evidence is to ensure that such testimony does not so usurp the fact-finding function of the jury."[151]

In the case at bar, Officer Alcazar's personal knowledge of the information being requested was minimal at best.[152] What specific training he had received in relation to the question being asked was not specified in a manner necessary to lay the appropriate foundation.[153] Furthermore, what limited knowledge he may have had relating to the boundaries of the Yakama Nation Indian Reservation appears to have been based on the knowledge of his trainers at the Bureau of Indian Affairs.[154] The *Garcia* Court, correctly addressed the issue stating,

> "Precisely because <u>Rule 701</u> limits the admissibility of lay opinions at trial to those based only on personal perceptions, an opinion such as [the Agent's], which appears to have been based on the totality of information gathered by various persons in the course of an investigation, was not admissible before a jury."[155]

While the circumstances of the information gathering process is different it is similar in nature. Officer Alcazar is being asked to offer a lay opinion as to the boundaries of the Yakama Nation Indian Reservation, which the record does not support that he has this information through personal knowledge, but at best would be second hand

---

[151] *United States v. Garcia,* 413 F.3d 201, 210-11 (2d Cir. 2005).
[152] 2 ER 283-285.
[153] 2 ER 283-285.
[154] 2 ER 284.
[155] *U.S. v. Garcia,* 413 F.3d 201, 213 (2d Cir. 2005).

information provided by members of the Bureau of Indian Affairs in a training program.[156] If the BIA trainer had personal knowledge then they would be the appropriate witness with personal knowledge that could testify to specific facts that would allow the jury, as finder of fact, to determine whether the factual information establishes the element beyond a reasonable doubt.

The *Garcia* Court, continued its FRE 701 analysis and ultimately held that the Agent's opinion testimony was inadmissible under FRE 701 and that the government would have been obliged to demonstrate its admissibility under FRE 702.[157] Where Mr. Andy's case is distinguishable from the *Garcia* case is that unlike the opinion testimony that was inadmissible but admitted into evidence in *Garcia,* the inadmissible testimony of Officer Alcazar that was admitted did have a substantial effect on the jury verdict of guilty, therefore the evidentiary error was not harmless.[158]

In the case at bar, the Court abused its discretion by overruling the defendant's speculation objection, and by admitting Officer Alcazar's testimony relating to what was within the boundaries of the Yakama Nation Reservation.[159] As argued above, Officer Alcazar lacked the personal knowledge to testify to the boundaries of the Yakama Nation Reservation and what specifically was within those boundaries. The result was inadmissible lay opinion testimony that invaded the province of the jury as

---

[156] 2 ER 283-285.
[157] *U.S. v. Garcia,* 413 F.3d 201, 217 (2d Cir. 2005).
[158] *U.S. v. Garcia,* 413 F.3d 201, 218-19 (2d Cir. 2005).
[159] 2 ER 283-285.

31

to the fourth element.[160] The evidentiary error clearly affected Mr. Andy's substantial rights. The admitted testimony was the only evidence offered by the government in an effort to establish the element that the assault occurred within the boundaries of the Yakama Nation Reservation (Indian Country). The fact that the jury returned a unanimous guilty verdict shows that the jury relied on this testimony to make a finding of fact that the assault took place within Indian Country. The record was otherwise absent of the boundaries of the Yakama Nation Reservation.

In sum, the evidentiary error was an abuse of discretion. The erroneous evidentiary ruling resulted in prejudicial error. The evidentiary error affected the defendant's substantial rights. Therefore, Mr. Andy respectfully requests that the Court vacate his conviction and remand for a new trial.

## VIII.  CONCLUSION

The trial court erred in denying Mr. Andy's FRE Rule 29 Motion for Judgment of Acquittal. No rational juror could find Mr. Andy guilty of the charge even after looking at the evidence in the light most favorable to the government. Furthermore, the trial court erred in denying Mr. Andy a jury instruction for the lesser-include offense of simple assault. By failing to do so, the Court denied Mr. Andy the opportunity to argue to the jury that he could be convicted of the lesser-included offense and acquitted

---

[160] 2 ER 81. See Proposed Final Jury Instruction 13, "Fourth, the assault took place within the boundaries of the Yakama Nation Indian Reservation, which I instruct you is in Indian Country;".

on the more serious offense. Finally, the trial court abused its discretion by committing evidentiary error resulting in prejudicial error. Therefore, Mr. Andy's conviction should be vacated, and the matter remanded to the trial court for a new trial.

Dated: February 10, 2026.

s/ Craig D. Webster
Craig D. Webster, WSBA# 40064
Federal Defenders of Eastern
Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 (fax)
Craig_Webster@fd.org
Attorney for Defendant-Appellant

## Certificate of Service

I hereby certify that on February 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: Ian Garriques, Assistant United States Attorney.

s/ Craig D. Webster
Craig D. Webster

34

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-3318

I am the attorney or self-represented party.

**This brief contains** 7,968 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- [ ] it is a joint brief submitted by separately represented parties.
- [ ] a party or parties are filing a single brief in response to multiple briefs.
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Craig D. Webster **Date** 02/10/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** | 25-3318

The undersigned attorney or self-represented party states the following:

☉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Craig D. Webster | **Date** | 02/10/2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)

**Form 17**      *New 12/01/2018*